## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## Civil Action No. 7:25-cv-1258

| | |
|---|---|
| HOLLY TAYLOR,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL'S ON THE WATERFRONT L.L.C., MICHAEL J. LAVIGNA, SR., and MICHAEL S. LAVIGNA, JR.,<br><br>            Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

COMES NOW, Plaintiff Holly Taylor ("Plaintiff"), by and through undersigned counsel, requesting a jury trial and alleges the following against Defendant Michael's on the Waterfront L.L.C. ("the Restaurant"), Michael J. Lavigna, Sr. ("Lavigna Sr."), and Michael S. Lavigna, Jr. ("Lavigna Jr.") (collectively, "Defendants"):

During her employment at the Restaurant, Plaintiff was subject to repeated instances of sexual harassment, assault and battery by co-worker Virgil Peterson ("Peterson"). On repeated occasions, Peterson groped her buttocks and pressed his penis and body against her backside against her will.

Despite reporting these incidents to Defendants and similar complaints by other women, Defendants failed to take appropriate corrective action, deliberately

1

destroyed video evidence of the harassment, and allowed Peterson to continue harassing Plaintiff and other female employees. Plaintiff was ultimately forced to resign from her position to protect her physical safety and wellbeing. After Plaintiff's constructive discharge, Peterson was later fired for sexually assaulting other female employees.

This lawsuit seeks to remedy severe emotional distress, humiliation, loss of income, and other damages Plaintiff has suffered as a result of Defendants' conduct.

This is an action for sexual harassment, hostile work environment based on sex and unwanted sexual touching, and constructive discharge under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). In addition, Plaintiff brings state law claims for negligent hiring, retention, and supervision, assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## PARTIES

1.     Plaintiff is a citizen and resident of New Hanover County, North Carolina, residing in the City of Wilmington. Plaintiff was employed by Defendants at their Restaurant from March 2022 until her constructive discharge on January 21, 2024.

2.     Defendant Michael's on the Waterfront L.L.C. ("the Restaurant") is a limited liability company that at all relevant times was organized under North Carolina law with its principal place of business at 5 South Water Street, Wilmington, NC 28401. According to the North Carolina Secretary of State's website, the Restaurant was administratively dissolved by the Secretary of State on November

20, 2024 pursuant to N.C.G.S. § 57D-6-06 for failure to file an annual report. At all relevant times, Defendants and the Restaurant employed more than fifteen (15) employees and are "employers" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b).

3.     Defendant Michael J. Lavigna, Sr. ("Lavigna Sr.") is, upon information and belief, a citizen and resident of Horry County in Myrtle Beach, South Carolina. At all relevant times, Lavigna Sr. owned, operated, and managed the Restaurant as a mere instrumentality and alter ego.  Lavigna Sr. employed more than fifteen (15) employees and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b).

4.     Defendant Michael S. Lavigna, Jr. ("Lavigna Jr.") is, upon information and belief, a citizen and resident of New Hanover County, North Carolina. At all relevant times and on information and belief, Lavigna, Jr. owned, operated, and managed the Restaurant as a mere instrumentality and alter ego. Lavigna Jr. employed more than fifteen (15) employees and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b).

5.     Lavigna Sr. and Lavigna Jr. both dominate and control Michael's on the Waterfront L.L.C., fail to observe corporate formalities, use the L.L.C. as a façade to shield themselves from liability to commit unlawful acts, and should be held liable under a piercing the corporate veil theory for these and other factors to be proven during discovery and at trial.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

7.     Venue is proper in the Eastern District of North Carolina, Southern Division, pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in New Hanover County, North Carolina, and because the unlawful employment practices and tortious conduct alleged herein were committed within this judicial district.

## ADMINISTRATIVE EXHAUSTION

8.     On April 22, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge Number 433-2024-02285, alleging sexual harassment, hostile work environment, constructive discharge, and retaliation.

9.     On March 31, 2025, the EEOC issued Plaintiff a Notice of Right to Sue letter.

10.     Plaintiff has timely filed this Complaint within ninety (90) days of receiving her Notice of Right to Sue letter.

11.     Plaintiff has satisfied all administrative prerequisites to filling this action and has exhausted all required administrative remedies.

4

## FACTS

12.     Plaintiff began her employment with Defendants in March 2022 at their Restaurant located in Downtown Wilmington.

13.     Throughout her employment, Plaintiff performed her job duties competently and professionally.

14.     On August 20, 2023, Peterson sexually harassed Plaintiff by inappropriately touching her buttocks against her will and pressed his body, including his penis, against her backside without her consent.  Plaintiff immediately told her coworker K.C. what happened.

15.     The next day, on August 21, 2023, another coworker, K.P., called Plaintiff to complain about what happened.  Plaintiff explained she experienced the same harassment and said they should call General Manager Michael Lavigna Jr., to report it.

16.     On August 21, 2023, Plaintiff promptly reported the harassment to General Manager Michael Lavigna Jr. via phone with K.P., and text message.

17.     Lavigna Jr. sent a text to Plaintiff inviting her to review the video footage of the incident on August 22.  On August 22, Lavigna, Jr. then rescinded that invitation claiming the "internet [is] so messed up."  Plaintiff asked to reschedule, but he never did.  Instead, rather than allowing her to review the video footage, Lavigna, Sr. met with Plaintiff on August 23, 2023 and promised a warning was being issued to Peterson.  He told her to let him know if it ever happened again.

18.     Lavigna Sr. later admitted to deliberately deleting the video evidence of Peterson's August 23, 2023 harassment of Plaintiff.

19.     Defendants did not sufficiently respond to her first sexual harassment report, and, of course, it happened again.

20.     On January 17, 2024, Peterson again sexually harassed Plaintiff twice in the same day.  First, he pressed his body and penis against her in the kitchen without her consent. Then, he put his hand on her buttocks while they were in the dining room.

21.     Plaintiff immediately reported the harassment, assault, and battery to Lavigna Jr. in person.  Later that same day, she sent him a text requesting to review the video footage.  He ignored her texts.

22.      Plaintiff continued to work her normal shifts, including two with Peterson, without any follow-up from Lavigna Sr. or Lavigna Jr. about her complaints.

23.     Finally, on January 21, 2024, Lavigna Jr. texted her back saying that he found nothing that "warranted action."  He said Peterson would continue to work at the restaurant.  Defendants did at least produce the video footage of the January 17 incident in the kitchen, but has yet to provide any footage for the dining room incident.  The January 17 video shows Peterson walking up behind Plaintiff in the kitchen and brushing his genital area against her buttocks while walking by. Plaintiff immediately recoils and moves to another part of the kitchen, away from Peterson so he cannot get behind her again.  Plaintiff appears visibly shocked and

6

disgusted in the video. Meanwhile, Peterson walks back to the sink with his arms crossed as he stands there, creepily watching Plaintiff's negative reaction to what he had just done. She then quickly finishes her work and leaves the kitchen.

24.     Upset and afraid for her wellbeing and physical safety, Plaintiff had no option but to resign on January 21, 2024.

25.     Later that same day, another coworker, A.A., texted Plaintiff. A.A. confided in her that Peterson had also touched her inappropriately at work.

26.     At the time Lavigna Jr. claimed he saw nothing that "warranted action," multiple other female employees at the Restaurant including K.C., K.P., A.A., and Plaintiff had experienced and reported similar sexual harassment, assaults, and batteries by Peterson.

27.     Despite multiple complaints about the same physical abuse, Defendants engaged in a pattern and practice of repeatedly failing and refusing to take appropriate corrective actions.

28.     Instead of addressing Peterson's ongoing sexual harassment, Defendants deliberately destroyed video evidence and allowed the hostile work environment to continue.

29.     Lavigna, Jr. intentionally and maliciously brushed these assaults under the rug.

30.     After Plaintiff's constructive discharge, Peterson was eventually terminated for subsequent assaults against other female employees.

31.     Throughout Plaintiff's employment, Defendants maintained a pattern

and practice of failing to properly investigate and address sexual harassment complaints from female employees.

32.     Defendants' owners and managers, including Lavigna Sr. and Lavigna Jr., were aware that Peterson had a history of sexually harassing female employees by touching their buttocks with his hands and brushing his penis against their backsides, but continued to employ him despite the known risk he posed to female staff members.

33.     The hostile work environment at the Restaurant was severe and pervasive, affecting Plaintiff and multiple female employees and creating an atmosphere where they felt unsafe and unprotected from sexual harassment.

34.     Defendants' failure to take appropriate corrective action after receiving multiple reports of Peterson's sexual harassment demonstrated deliberate indifference to the rights and safety of Plaintiff and its female employees.

35.     By deleting video evidence of Peterson's harassment, Defendants actively worked to conceal and perpetuate the hostile work environment rather than address it.

36.     The constructive discharge of Plaintiff and the subsequent termination of Peterson for similar conduct against other female employees demonstrates that Defendants knew of the severity of Peterson's behavior but chose not to act until after Plaintiff was forced to resign.

## COUNT I
### (Sex Discrimination, Sexual Harassment/Hostile Work Environment, and Constructive Discharge in Violation of the Civil Rights Act of 1964— Against all Defendants)

37.    The allegations in the previous paragraphs are realleged and incorporated herein by reference.

38.    At all relevant times, Plaintiff was an employee covered by the protections of Title VII, as defined in 42 U.S.C. § 2000e(f).

39.    At all relevant times, Defendants employed fifteen (15) or more employees and were "employers" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

40.    Lavigna Sr. and Lavigna Jr. both dominate and control Michael's on the Waterfront L.L.C., fail to observe corporate formalities, use the L.L.C. as a façade to shield themselves from liability to commit unlawful acts, and should be held liable under a piercing the corporate veil theory for these and other factors to be proven during discovery and at trial.

41.    Defendants violated Title VII by subjecting Plaintiff to unwelcome sexual harassment by Peterson, including but not limited to:

    a. Inappropriate touching of her buttocks;
    b. Pressing his body, including his penis, against her without consent;
    c. Repeated physical contact of a sexual nature;
    d. Failing to address complaints raised by Plaintiff and other female coworkers
    e. Creating an intimidating and hostile work environment.

42.    The harassment Plaintiff experienced was based on her sex.

43. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and created an abusive working environment.

44. The hostile work environment was both objectively and subjectively offensive, as evidenced by:

   a. Repeated instances of unwanted sexual touching;
   b. Multiple female employees reporting similar experiences;
   c. Video evidence of the harassment;
   d. Plaintiff's immediate reporting of the incidents;
   e. Defendants' failure and refusal to adequately address her reports from the August 21, 2023 and January 17, 2024 incidents;
   f. Had Defendants adequately addressed Plaintiff's first complaint in August 2023, and the subsequent complaints by other females, the second incident would not have occurred;
   g. Plaintiff's constructive discharge;

45. Defendants created and maintained working conditions that were so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

46. The intolerable conditions included:

   a. Repeated instances of sexual harassment including assault and battery;
   b. Defendants' failure to take appropriate corrective action;
   c. Deliberate destruction of evidence;
   d. Continued exposure to her harasser; and
   e. Legitimate fears for her physical safety and well being.

47. Defendants callously dismissed Plaintiff's January 17, 2024 report of sexual harassment. Defendants did not take Plaintiff's complaints seriously based on her sex (female). If Plaintiff were male, Defendants would have treated her more favorably and with respect.

48. Defendants had actual knowledge of the harassment through:

a. Plaintiff's direct reports to Lavigna Jr. on August 21, 2023, and January, 17, 2024;
b. Video evidence reviewed by Lavigna Sr. on August 23, 2023;
c. Video evidence of the January 17, 2024 incident reviewed by Defendants
d. Similar complaints from other female employees; and
e. Direct observation of Peterson's conduct.

49. Despite this knowledge, Defendants failed to take prompt and appropriate corrective action to address the harassment by:

a. Allowing Peterson to continue working in proximity to female employees;
b. Failing to implement appropriate disciplinary measures and corrective action;
c. Deliberately destroying video evidence of the harassment; and
d. Dismissing Plaintiff's January 2024 complaint without proper investigation.

50. Defendants' actions and inactions created and perpetuated a hostile work environment that was severe and pervasive enough to affect the terms and conditions of Plaintiff's employment.

51. Moreover, Defendants have a pattern or practice of subjecting female employees to sexual harassment and a sexually hostile work environment. Plaintiff fell victim to this pattern or practice.

52. Defendants constructively discharged Plaintiff. Defendants intentionally created and harbored a work environment that was so intolerable that any reasonable person would resign.

53. Defendants failed to remedy these conditions despite having the authority and obligation to do so.

54.     Plaintiff's resignation on January 21 ,2024 was a constructive

discharge because:

   a. She had reported multiple instances of harassment;
   b. Defendants failed to take appropriate corrective actions;
   c. She faced ongoing risk of further harassment; and
   d. She had no reasonable alternative but to resign to protect her safety.

55.     As an actual, proximate, and foreseeable result of Defendants, Plaintiff

has suffered lost income and other fringe benefits, damage to reputation, emotional

distress, mental distress and anxiety, depression, embarrassment, humiliation, and

other compensatory damages.

56.     Defendants' actions were done maliciously, willfully, wantonly, or in a

manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of

Defendants' conduct, Plaintiff is entitled to recover punitive damages. Defendants'

owners, officers, directors, and managers participated in and condoned the malicious,

willful, wanton, and reckless conduct alleged above.

57.     Plaintiff is entitled to all relief available by law, including but not

limited to, attorneys' fees, costs, interest at the legal rate, a tax-adjustment on any

lump  sum payment.

## COUNT II
## (Negligent Hiring, Retention, and Supervision—Against All Defendants)

58.     The allegations in the previous paragraphs are realleged and

incorporated herein by reference.

59. Defendants owe a duty of care to Plaintiff and their employees to keep them safe and foster a work environment free from unwanted sexual advances, including physical sexual harassment.

60. Defendants negligently failed to properly screen, supervise, or terminate Peterson, despite his clear unfitness for employment in a workplace requiring professionalism and safety.

61. Peterson exhibited inappropriate behavior and misconduct prior to or during his employment with Defendants that should have prompted closer scrutiny, discipline, or termination.

62. Defendants received actual notice of Peterson's unfitness and sexual harassment through repeated complaints from Plaintiff and others, including but not limited to:

   a. Plaintiff's written and verbal complaints on August 21, 2023, and January 17, 2024;
   b. Her requests for review of video footage; and
   c. Her report of physical assault by Peterson, captured at least in part on video.

63. Alternatively, Defendants had constructive notice of Peterson's unfitness, as any reasonably careful employer exercising ordinary care in oversight and supervision would have discovered and corrected Peterson's conduct and terminated him.

64. Rather than investigate or take disciplinary action, Defendants destroyed video evidence and continued to allow Peterson to work in proximity to Plaintiff, enabling repeated harassment and physical abuse.

65.     As a direct and proximate result of Defendants' negligent hiring, supervision, and retention of Peterson, Plaintiff suffered:

   a.  Repeated emotional trauma;
   b.  Constructive discharge from her position;
   c.  Loss of income and employment benefits; and
   d.  Severe psychological and emotional distress.

66.     Defendants' failure to adequately investigate, supervise, or discipline Peterson—despite prior notice and clear red flags—constitutes gross negligence and demonstrates a reckless disregard for the safety and well-being of their employees, warranting an award of punitive damages under N.C.G.S. § 1D-1, *et seq*. Defendants' owners, officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## COUNT III
### (Assault—Against All Defendants)

67.     The allegations in the previous paragraphs are realleged and incorporated herein by reference.

68.     On multiple occasions during her employment, Plaintiff was subjected to unwanted and aggressive physical behavior by Peterson, including:

   a.  Groping her without consent;
   b.  Intentionally cornering her in confined spaces; and
   c.  Making aggressive physical movements that placed her in reasonable fear of imminent harm or offensive contact.

69.     Peterson acted intentionally and without justification, and his actions were designed to cause apprehension of physical harm.

70.     Plaintiff reasonably believed that Peterson was going to touch her in an unwanted and offensive manner, and she experienced genuine fear and emotional distress as a result.

71.     Peterson's actions were willful, malicious, and taken with conscious disregard for Plaintiff's rights and physical autonomy.

72.     Defendants are responsible for Peterson's batteries through the doctrines of respondent superior, ratification, and agency. Peterson's assault was committed at Defendants' place of business while he was working within the scope of his employment.

73.     As an actual, proximate, and foreseeable result of Peterson's actions, Plaintiff has suffered lost income and other fringe benefits, damage to reputation, emotional distress, mental distress and anxiety, post-traumatic stress, depression, embarrassment, humiliation, and other compensatory damages.

74.     Defendants' actions were done maliciously, willfully or wantonly or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages under N.C.G.S. § 1D-1, *et seq*. Defendants' owners, officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## COUNT IV
### (Battery—Against All Defendants)

75.     The allegations in the previous paragraphs are realleged and incorporated herein by reference.

76.     Peterson intentionally made harmful and offensive physical contact with Plaintiff, including but not limited to:

   a. Grabbing and groping her buttocks without consent;
   b. Pressing his body and penis against hers inappropriately; and
   c. Touching her in a sexually offensive manner during work hours.

77.     The physical contact by Peterson was neither consented to nor privileged, and was committed in the scope of his employment duties for Defendants.

78.     Peterson's actions were willful, malicious, and taken with conscious disregard for Plaintiff's rights and physical autonomy.

79.     Defendants are responsible for Peterson's batteries through the doctrines of respondent superior, ratification, and agency. Peterson's batteries were committed at Defendants' place of business while Peterson was working within the scope of his employment.

80.     As an actual, proximate, and foreseeable result of Peterson's actions, Plaintiff has suffered lost income and other fringe benefits, damage to reputation, emotional distress, mental distress and anxiety, depression, embarrassment, humiliation, and other compensatory damages.

81.     Defendants' actions were done maliciously, willfully or wantonly or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages under N.C.G.S. § 1D-1, *et seq*. Defendants' owners, officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

16

## COUNT V
### (Negligent Infliction of Emotional Distress—Against All Defendants)

82.     The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

83.     Defendants owed a duty of care to prevent and not tolerate sexual harassment and abuse in the workplace.

84.     Defendants breached that duty by:

    a. Failing to adequately address repeated complaints of sexual harassment, assault, and battery and allowing it to continue;
    b. Refusing to remove or discipline an employee known to engage in sexual harassment, assault, battery, and abusive behavior, and
    c. Destroying video footage that would have confirmed the plaintiff's reports and protected her from further abuse.

85.     It was reasonably foreseeable that such conduct, especially in a workplace context involving repeated harassment and physical violations, would cause Plaintiff to suffer severe emotional distress.

86.     As a result of Defendants' negligence, Plaintiff did, in fact, experience:

    a. Severe emotional distress, including anxiety, fear, and mental anguish requiring treatment and therapy;
    b. Diminished well-being and sense of safety in the workplace; and
    c. Constructive discharge and loss of income, adding to the trauma endured.

87.     Defendants' conduct, even if not intentional, showed a reckless indifference to the foreseeable harm Plaintiff would experience as a result of their inaction.

88.     Plaintiff continues to suffer long-term severe and disabling emotional consequences caused by the environment of abuse and neglect sustained by Defendants and has been diagnosed with post-traumatic stress disorder, adjustment disorder with anxiety, and adjustment disorder with mixed anxiety and depressed mood. Plaintiff has experienced recurrent distressing dreams and memories, avoidance of places and situations that trigger distress, persistent negative beliefs about others and the world, persistent fear and anger, diminished interest in activities, irritable behavior, inability to experience loving feelings, and difficulty concentrating and completing tasks.

89.     Defendants' conduct was not only negligent but foreseeably harmful, and it caused Plaintiff to suffer severe emotional distress. Defendants' disregard for the obvious risk of harm demonstrates a willful indifference to Plaintiff's emotional and physical safety, justifying an award of punitive damages under N.C.G.S. § 1D-1, *et seq*. Defendants' owners, officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## COUNT VI
## (Intentional Infliction of Emotional Distress—Against All Defendants)

90.     The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

91.     Defendants engaged in extreme and outrageous conduct against Plaintiff by:

      a.     Allowing and enabling repeated sexual assaults against Plaintiff by Peterson despite multiple reports of his inappropriate conduct;

18

b. Deliberately destroying video evidence of the sexual assaults;
c. Forcing Plaintiff to continue working in close proximity to Peterson after reporting the assaults and batteries;
d. Explicitly refusing to take any action to protect Plaintiff from further sexual assaults and batteries, despite promising to address such conduct if it occurred again.
e. Creating conditions where Plaintiff had no choice but to resign to protect her physical safety and wellbeing.

92. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency tolerated by society, as evidenced by:

a. Multiple female employees reporting similar sexual harassment by Peterson;
b. Defendants' deliberate destruction of video evidence showing the assaults;
c. Defendants' explicit refusal to take action despite clear evidence and multiple reports;
d. Owner Lavigna Sr's promise to warn Peterson and take action if harassment occurred again, followed by deliberate inaction when it did occur
e. The pattern of enabling Peterson's conduct until Plaintiff was forced to resign, after which Peterson was eventually terminated for subsequent assaults and batteries against other women.

93. Defendants' conduct was intended to and did in fact cause Plaintiff severe emotional distress.

94. Defendants' conduct exceeded all bounds usually tolerated by decent society. Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

95. Defendants' conduct caused Plaintiff severe and disabling emotional or mental conditions which are generally recognized and diagnosed by professionals trained to do so. Plaintiff has been diagnosed with post-traumatic stress disorder,

adjustment disorder with anxiety, and adjustment disorder with mixed anxiety and depressed mood. Plaintiff has experienced recurrent distressing dreams and memories, avoidance of places and situations that trigger distress, persistent negative beliefs about others and the world, persistent fear and anger, diminished interest in activities, irritable behavior, inability to experience loving feelings, and difficulty concentrating and completing tasks.

96.     As an actual, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered lost income and other fringe benefits, damage to reputation, emotional distress, mental distress and anxiety, post-traumatic stress, depression, embarrassment, humiliation, and other compensatory damages.

97.     Defendants' actions were done maliciously, willfully or wantonly or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages under N.C.G.S. § 1D-1 *et seq*. Defendants' owners, officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## JURY TRIAL DEMANDED

98.  Plaintiff asks that this matter be tried by a jury of her peers**.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.  Enter a judgment against Defendants, jointly and severally, and award Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff back pay, front pay, lost wages and benefits, out-of-pocket expenses, and a tax-adjustment for any lump sum payment;

3. Award Plaintiff compensatory damages for emotional distress, mental anguish, pain and suffering, and damage to her reputation;

4. Award Plaintiff punitive damages pursuant to 42 U.S.C. § 1981a;

5. Award Plaintiff punitive damages pursuant to N.C.G.S. § 1D-1 *et seq*.;

6. Award Plaintiff pre-judgment and post-judgement interest at the maximum rate allowed by law;

7. Award Plaintiff all reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

8. Enter a judgment against Defendants, jointly and severally;

9. Issue an injunction ordering Defendants to implement effective policies and procedures to prevent sexual harassment in the workplace;

10. Grant a trial by jury on all issues so triable;

11. Award Plaintiff such other and further relief, both legal and equitable, as this Court deems just and proper.

This is the 26th day of June, 2025.

Respectfully Submitted,

*/s/ Jennifer D. Spyker*
Jennifer D. Spyker (N.C. Bar #46048)
TIN, FULTON, WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
Tel.:  704-338-1220
Fax:  704-338-1312

jspyker@tinfulton.com
*Attorney for Plaintiff*

**/s/ Sean F. Herrmann**

Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
1712 Euclid Avenue
Charlotte, NC 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

22